JOHNSON *et al. v.* JOHNSON *et al.*

(In Banc. May 8, 1944.)

[17 So. (2d) 805. No. 35584.]

R. F. B. Logan, of Hernando, and J. R. McDowell, of Memphis, Tenn., for appellants.

Gerald Chatham, of Hernando, for appellees.

774

**Roberds, J.**, delivered the opinion of the court.

Richard Johnson and Cherry Williams were duly married in 1875. They lived together as man and wife until 1890. During that time five children were born to them, two of whom are now living and three of whom are dead. In 1891 Cherry left Richard while they were living in Marshall County, Mississippi. She went to Tennessee and subsequently to Arkansas. Richard, shortly after the separation, moved to DeSoto County, where he resided until his death March 2, 1941. Richard never heard from Cherry again. In 1896 Richard and Ella Wright were ceremonially married. Richard had not obtained a divorce from Cherry, nor she from him, to his knowledge, and it is reasonably certain, although not conclusively so proven, that she had not done so as a matter of fact. Richard and Ella discussed this situation before going through their ceremony of marriage. They had heard Cherry had been drowned in Arkansas. She had been gone some six years. So confronted they sought the advice of Dr. Wesson, a white man, their family doctor, as to whether Richard should obtain a divorce from Cherry before they, Richard and Ella, should become married. Dr. Wesson advised them he did not think that was necessary under the circumstances; whereupon they, without Richard having obtained a divorce from Cherry, undertook to become man and wife through a public marriage ceremony under a regular license. They lived together as man and wife in DeSoto County, holding themselves out as such, and being so recognized in the community in all respects until the death of Richard. During this time three children were born to them, whom they at all times recognized and treated as legitimate children. Cherry died in Arkansas in 1923. Richard and Ella knew nothing of that, in fact, they did not know whether she was living or dead, but, as stated, there was evidence they thought she had drowned many years before. Knowing nothing of the death of Cherry they naturally had no new understand-

as to their marital status and made no change in their relations with each other after her death. They simply continued to live together as man and wife with the same intentions and understanding as theretofore.

When Richard died he owned 180 acres of land, and some personal property, in DeSoto County. Richard, Jr., and Lula Johnson Lane, the two living children of Richard and Cherry, filed a bill in chancery for sale of these lands and division of proceeds, averring that they, together with certain heirs of deceased children of Richard and Cherry, were tenants in common thereof as the only heirs at law of Richard, deceased, asserting that Ella was not the lawful wife of Richard and that their three children were illegitimates, and that, therefore, they owned no interest in the estate left by Richard. This contest then is between two living children and certain grandchildren of Richard and Cherry, on the one side, and Ella Johnson and the three children of herself and Richard, on the other side.

The chancellor held that all of the parties hereto were lawful heirs of Richard Johnson, deceased, and that Ella was his lawful widow.

He found that the marriage between Richard and Ella was entered into in good faith, with the bona fide intention of becoming man and wife, and that they lived together as man and wife under those conditions and were so recognized by the general public until the death of Richard, some forty-five years. The evidence amply supports this finding.

He held that, although common law marriages were not recognized in Mississippi from 1890 to 1906, that such marriages have been recognized since 1906, and that all of the essential facts of such marriage exist in this case, and that the marriage being at all times in good faith, and so continuing from 1923, when Cherry died, until the death of Richard in 1941, that the marriage became lawful and legal and valid after the removal of the impediment thereto by the death of Cherry, without any new or different

understanding or intention between them as to their relations, and that their offspring became and are legitimate children.

The chancellor was correct in his findings and conclusions. Section 461, Code 1942, (Section 2363, Code 1930); Section 465, Code 1942 (Section 3249, Code 1906, Section 2367, Code 1930); Section 474, Code 1942 (Section 1408, Code 1930); Sims v. Sims, 122 Miss. 745, 85 So. 73; Sykes et al. v. Sykes et al., 162 Miss. 487, 139 So. 853.

Affirmed and remanded.